UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Angelina Codina,                                    Civil No. 06-4048 (JNE/FLN)

          Petitioner,

    v.                                              **REPORT AND RECOMMENDATION**

Michael Chertoff, Secretary of
the United States Department
of Homeland Security; Mark
Cangemi, Director of Detention
and Removal, Minnesota District,
United States Immigration and
Customs Enforcement; and Pat
Carr, Jail Commander of Sherburne
County Jail.

          Respondents.

_____

*Pro se* Petitioner.
Mary Jo Madigan, Assistant United States Attorney, for Respondents Michael Chertoff and
Mark Cangemi.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on the

Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [#1].  Respondent filed

a response in opposition to Petitioner's petition [#12].  The matter was referred to the undersigned

for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons

which follow, this Court recommends that the petition be denied.

## I. BACKGROUND

Petitioner Angelina Codina (hereinafter "Petitioner") is a native of Uruguay and a citizen of

Canada.  Petitioner is currently in the custody of the United States Immigration and Customs

Enforcement (hereinafter "ICE"), and is currently being held at the Sherburne County Jail in Elk River, Minnesota, pursuant to a contractual agreement with the Department of Homeland Security. Respondent Michael Chertoff is the Secretary of the United States Department of Homeland Security. Respondent Mark Cangemi is the Director of Detention and Removal for the Minnesota District of the United States Immigration and Customs Enforcement. Respondent Pat Carr is the Jail Commander of Sherburne County Jail.[1]

Petitioner arrived at John F. Kennedy International Airport (hereinafter referred to as "JFK airport") in New York on or about January 26, 1998. (Pet. at 17.) Petitioner alleges that she arrived at JFK Airport "as a returning permanent resident or adjustment applicant."[2] (Pet. at 17.) The immigration inspector determined that "Petitioner was an arriving alien ineligible for admittance to the United States, citing a violation of the Immigration and Nationality Act . . . as having committed a crime of moral turpitude. The immigration inspector noted that Petitioner was convicted in Canada of a crime involving falsified documents." (A.R. at 191.) At that time the immigration inspector served Petitioner with a Notice to Appear and placed Petitioner in removal proceedings. (Pet. at 17; *see also* Ex. 9.) The charges against Petitioner were subsequently amended on April 2, 1998, and "Petitioner was instead charged with violations of . . . 8 U.S.C. §§ 1182 (a)(7)(A)(i)(I) and (B)(i)(I), alleging that Petitioner did not possess or present valid immigration documents or valid

---

[1] Assistant United States Attorney Mary J. Madigan only represents the federal Respondents, Michael Chertoff and Mark Cangemi. Respondent Pat Carr has not filed a response to the petition in this case.

[2] Although Petitioner claims to have been admitted into the United States as a lawful permanent resident, on March 8, 2006, the Department of Homeland Security wrote to Petitioner to inform her that there is no evidence of admission for adjustment to lawful permanent resident status in any of Petitioner's agency files. (Administrative Record, Docket Number 12-2 (hereinafter referred to as "A.R.") at 144.)

entry documents to enter the United States." (Pet. Ex. 10.)  A hearing on the removal proceedings was held in 1998 and the Immigration Judge dismissed the charges against Petitioner, holding that the Immigration and Naturalization Service[3] did not sufficiently show that Petitioner was inadmissible as charged.  (A.R. at 191.)  The Immigration and Naturalization Service appealed this decision and the Board of Immigration Appeals (hereinafter referred to as "BIA") reversed this decision in 2003.  (A.R. at 15.)  The BIA held that Petitioner did not present valid entry documents and that Petitioner did not meet her burden to show that she was not inadmissible as charged. (Docket Number 3, Ex. 12 at 1-2.)  The BIA reversed the decision of the Immigration Judge and remanded the case to the Immigration Judge to determine whether Petitioner was eligible for any relief from removal.  (Docket Number 3, Ex. 12 at 2.)  On March 5, 2004, the Immigration Court in New York sent Petitioner a paper that stated that file A 76-496-932 was administratively closed. (Docket Number 3, exhibit 13.)  Exhibit 13 is a form from the United States Department of Justice, Executive Office for Immigration Review, from the Immigration Court in New York City.  (Pet. Ex. 13.)  On this form, the "other" box is checked and, written in handwriting in the space provided next to the "other" box, it states "admin closure order atty withdrawal order."  (Pet. Ex. 13.)  Exhibit 13 is signed, that signature is illegible, and the line below the signature states "Court Clerk Immigration Court."  (Pet. Ex. 13.)  In addition, the form states that "[a] copy of this decision was personally served [to] TA's [and was] served via US mail [to] alien/atty."  Immediately below this notation is a line that reads: "Date 3/5/04 IJ RDW CLK IAN."  (Pet. Ex. 13.)

During the time when the above decision was appealed by the Immigration and

---

[3] The Immigration and Naturalization Service is the agency that dealt with immigration proceedings prior to the formation of ICE.

Naturalization Service to the BIA, Petitioner was also the target of a criminal prosecution in New

York.  *See People v. Codina*, 297 A.D.2d 539, 747 N.Y.S.2d 209 (N.Y.A.D. 1 Dept. September 17,

2002).  Petitioner was tried and convicted of two counts of scheme to defraud in the first degree,

eleven counts of grand larceny in the third degree, one count of grand larceny in the fourth degree

and thirteen counts of practicing or appearing as an attorney-at-law without being admitted and

registered.  *Id.* at 540, 747 N.Y.S.2d at 210.  The Appellate Division of the Supreme Court reversed

the convictions and remanded the case for a new trial.  *Id.* at 541, 747 N.Y.S.2d at 211.  Petitioner

was retried, convicted, and sentenced to a term of imprisonment.  Petitioner served her term of

incarceration and on May 15, 2003, the Immigration and Naturalization Service issued a detainer

with the New York authorities. (A.R. at 191-192.)  On April 26, 2005, the Supervisory Deportation

Officer made a custody determination that Petitioner was to be detained under file number A 76-

496-932.  (Pet. Ex. 14.)  When Petitioner became eligible for release from the state court charges

she was taken into the custody of ICE on May 5, 2005, pursuant to the detainer that had been lodged

with the New York authorities on May 15, 2003.

On November 30, 2005, Immigration Judge Alan Vomacka held a hearing on the remand of

the matter from the BIA.  (Pet. Ex. 17.)  The Immigration Judge determined that Petitioner was an

arriving alien and ordered Petitioner removed from the United States.  (Pet. Ex. 17.)  Petitioner

appealed this order to the BIA.

On January 10, 2006, Petitioner filed a Petition for a Writ of Habeas Corpus pursuant to 28

U.S.C. § 2241 in the United States District Court for the District of New Jersey.  (A.R. at 5-124.)

On February 3, 2006, the District of New Jersey transferred a portion of the petition[4] to the Second Circuit Court of Appeals. (A.R. at 125-127.) The District of New Jersey retained jurisdiction over Petitioner's claims challenging her detention. (A.R. at 127.)

Petitioner appealed her removal order and on April 20, 2006, the BIA dismissed Petitioner's appeal. (A.R. at 217-220.) Petitioner filed a motion to reconsider the April 20, 2006, dismissal of her appeal, and Petitioner's motion to reconsider was denied on July 12, 2006. (A.R. at 221-222.) On July 27, 2006, Petitioner's post-removal order custody review was conduct by ICE pursuant to 8 C.F.R. § 241.4. (A.R. 223-229.) ICE determined that Petitioner should not be released from custody at that time because she "has a lengthy criminal history of Fraud in Canada [and because she] demonstrated she is a recidivist through her conviction on numerous counts of Grand Larceny in New York, after the [Immigration Judge] terminated her proceedings." (A.R. at 229.) ICE has contacted the Consulate General of Canada in New York, and the Consulate General informed ICE that it was ready to issue a travel document as soon as the Stay of Removal was lifted by the Second Circuit Court of Appeals. (A.R. at 226.)

During the post-removal order custody review, ICE noted that Petitioner's A-file history included the following three numbers:

> A-72 927 524: This file is the correct A-file assigned to Angelina Codina, reflecting her I-140 and I-485 adjustment of status application. This file is recognized by DRO as her proper A-file. DACS information reflects this A-file. However subject's EOIR information and information on her [Notice to Appear] and other removal paperwork is A-76 496 932.

> A-76 496 932: was erroneously assigned to Angelina Codina at JFK airport on

---

[4] The District of New Jersey transferred the portion of the petition which challenged Petitioner's removal order. The District of New Jersey transferred this portion of the petition to the Second Circuit Court of Appeals pursuant to the REAL ID Act of 2005. *See infra*.

January 26, 1998 when she was served with her Notice to Appear. This A-number was later issued to John William McCARTHY, 8/2/1970, Canada LPR. This A-number is the one Angelina Codina was ordered removed under. All the BIA and [Immigration Judge] decisions on the EOIR screen in DACS fall under this A-number.

A-72 253 183: was assigned to Angelina Codina when she applied for advanced parole under her pending adjustment of status application.

(A.R. at 228.)

On July 31, 2006, the District Court for the District of New Jersey determined that Petitioner was not entitled to a bond hearing, and therefore the court ordered Petitioner's continued detention. (A.R. at 201.) Petitioner appealed these issues in three separate cases to the Court of Appeals for the Second Circuit. *See* Second Circuit Docket Numbers 05-6461; 06-0592; and 06-2359; *see also* http://pacer.ca2.uscourts.gov. Two of these cases were dismissed[5] and the third case, case number 06-2359 (hereinafter referred to as "the Second Circuit case"), is active in front of the Second Circuit. In the Second Circuit case Petitioner filed a motion to stay the removal Order. *See* http://pacer.ca2.uscourts.gov, Case Number 06-2359. On November 2, 2006, the Second Circuit granted Petitioner's motion to stay the removal order and on November 28, 2006, the Second Circuit referred the motion for a stay of removal to the panel to review the merits of the petition. *Id*. The petition is set to be heard by the Second Circuit as early as the week of April 30, 2007.[6] *Id*.

_____

[5] Case number 05-6461 was disposed of by an order dated November 28, 2006. Petitioner filed a motion to reconsider this decision on December 27, 2006, and the Second Circuit has yet to address that motion. *See* http://pacer.ca2.uscourts.gov. Case Number 05-6461. Case number 06-0592 was dismissed for lack of jurisdiction on November 28, 2006. *See* http://pacer.ca2.uscourts.gov. Case Number 06-0592; Case Number 06-2359.

[6] The Second Circuit stated that the case

presents substantial questions of law, including: (1) whether the BIA's regulation precluding Codina from applying for an adjustment of status because she was an arriving alien in removal proceedings, see 8 C.F.R. § 245.1 (c)(8), is valid, and

## II.  LEGAL ANALYSIS

### A.      Petitioner's Challenges to the Final Administrative Order of Removal Must Be Dismissed.

Section 106 of the REAL ID Act amends portions of section 242 of the Immigration and

Nationality Act, 8 U.S.C. § 1252.  Section 1252(a)(5) states that

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section.

*Id*. § 1252(a)(5).  Section 242(b)(2) of the Immigration and Nationality Act defines the proper venue

for a petition for review as "the court of appeals for the judicial circuit in which the immigration

judge completed the [underlying immigration] proceedings."   INA  §  242(b)(2),  8  U.S.C.  §

1252(b)(2).

The petition in the present case is, in part, a challenge to Petitioner's removal order.

Petitioner advances several arguments in her petition that challenge the validity of the removal

order.  First, Petitioner argues that the removal order in this case was legally and facially invalid.

Petitioner argues that

> It is respectfully submitted that the assertion as to the legal and facial invalidity of the removal order is not raised here . . . for the purpose of challenging the order of removal per se, or for the purpose of asking this Court to review the merits of the

---

whether the rescission of that regulation applies retroactively to Codina's case; and (2) whether the government violated any of its obligations under section 291 of the Immigration and Nationality Act, 8 U.S.C. § 1361, that would give rise to any relief for Codina.
*See* http://pacer.ca2.uscourts.gov, Case Number 06-2359.

> removal order.  Rather, the Petitioner contends that the jurisdictional defects noted
> herein bear squarely upon the unlikelihood that her removal will occur in the
> foreseeable future as the order of removal is jurisdictionally void on its face as ICE
> is prohibited by law from executing her removal under someone else's alien
> registration number.

(Reply Mem. at 8.)  Although Petitioner argues that "the assertion as to the legal and facial invalidity

of the removal order is not raised here . . . for the purpose of challenging the removal order" the fact

remains that this Court must necessarily determine the validity of the removal order to entertain

Petitioner's argument.  (Reply Mem. at 8.)

Petitioner argues that, because the administrative record reveals that she was erroneously

assigned an incorrect alien number at JFK airport on January 26, 1998, when she was served with

the Notice to Appear, and because this erroneously assigned file number was the file number under

which she was ordered to be removed, her removal is unlikely to occur because the removal order

is jurisdictionally void on its face as ICE cannot execute her removal under someone else's alien

registration number.  In order to entertain this argument this Court must necessarily decide that the

removal order was invalid to find that Petitioner's removal is unlikely to occur in the future.

However, the review of validity of the removal order is within the sole jurisdiction of the Second

Circuit Court of Appeals as required by the REAL ID Act; therefore, this Court cannot consider the

validity of the removal order.  This argument is a direct challenge to the order of removal, and this

Court does not have jurisdiction to hear this claim[7].

Next,

> Petitioner claims permanent resident status and the right of lawful presence in the
> United States under alien registration number A72-253-183 issued to her pursuant

---

[7] Petitioner makes a similar and related argument with regard to her continued detention.
The Court has jurisdiction to address such a claim and will do so in section B.

> to an adjustment application filed by her in November 2, 1995 and acted upon by the Service. [Petitioner argues that] [t]he Department does not by the current proceedings here seek to annul any right of presence acquired under alien registration number A72-253-183.

(Pet. at 7.)  Whether or not Petitioner is a permanent resident is a removal determination and the REAL ID Act prevents this Court from hearing this claim.  This is a challenge to the removal order because it requires this Court to determine whether Petitioner has the right of lawful presence in the United States; a decision that has already been determined by the issuance of the removal order.

Furthermore, Petitioner argues that the Notice to Appear is subject to cancellation because it "erroneously identifies petitioner's travel document as having been issued under an incorrect alien number pertaining to another Canadian citizen thus rendering the petitioner the incorrect party in the removal proceeding."  (Pet. at 8-9.)  However, this argument requires this Court to make a determination regarding the final removal order, and the REAL ID Act prevents this Court from making such a determination.  Therefore, pursuant to the REAL ID Act, this Court does not have jurisdiction over this claim.

Next, Petitioner argues that

> the order of removal in this case hinges on the argument that upon her return to the United States in 1998, the Petitioner was not in possession of an immigrant visa or entry document listed in [8 C.F.R.§] 1211 and is therefore to be excluded as an inadmissible and undocumented alien . . . Petitioner, however, submits that as an applicant for adjustment of status, traveling with an advance parole which she applied for and obtained in the United States prior to her departure . . . she was exempt from the provisions of . . . [8 C.F.R. § 1211], by virtue of the regulations at 8 C.F.R. § 1245.4.

(Reply Mem. at 6.)  Petitioner argues that this argument provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and, thus, [Petitioner] has met the standard set forth by the Supreme Court in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001)."

(Reply Mem. at 7.)  This Court cannot address this argument as it is a direct challenge to the order of removal.  This Court would necessarily have to decide that the removal order in this case was legally void before it determined whether the fact that the removal order is legally void constitutes good reason that there is no significant likelihood of removal in the reasonably foreseeable future. As stated above, the REAL ID Act does not provide this Court with jurisdiction to hear Petitioner's challenges to her order of removal; therefore, the Court does not have jurisdiction to address this argument.

In addition, Petitioner argues that the Notice to Appear is subject to cancellation because it "improperly orders the petitioner to appear before an Immigration Judge in a regular section 240 removal proceeding which is statutorily prohibited in the case of an applicant charged with violating INA § 212(a)(7)(A)(i)(I)."  (Pet. at 8.)  This argument squarely challenges the removal order, as it challenges the validity of the Notice to Appear, which is the charging document upon which the removal order is based.  If the Notice to Appear is invalid, then, necessarily, the removal order would also be invalid.  As this Court lacks jurisdiction to review the removal order in this case, the Court also lacks jurisdiction to determine the validity of the Notice to Appear, the charging document upon which the removal order is predicated.

Next, Petitioner argues that the Notice to Appear is subject to cancellation because it "erroneously classifies the petitioner as an 'arriving alien' or 'applicant for admission' contrary to the statutory and regulatory provisions applicable herein."  (Pet. at 9.)  This argument squarely challenges the removal order, as it challenges the validity of the Notice to Appear, which is the charging document upon which the removal order is based.  If the Notice to Appear is invalid, then, necessarily, the removal order would also be invalid.  As this Court lacks jurisdiction to review the

-10-

removal order in this case, the Court also lacks jurisdiction to determine the validity of the Notice

to Appear, the charging document upon which the removal order is predicated.

Since Petitioner's challenge to her removal order is already pending before the Court of

Appeals for the Second Circuit[8], and since the REAL ID Act prevents this Court from reviewing an

order of removal, this Court recommends that these portions of the petition challenging Petitioner's

removal order be dismissed as this Court is without jurisdiction to review the removal order.


**B.      Petitioner Should Remain in Detention Pending the Disposition of Her Appeal
           to the Court of Appeals for the Second Circuit.**

**1.      Petitioner's removal period has not yet begun; therefore, the holding in
          *Zadvydas v. Davis* does not apply in this case.**

Petitioner argues that

> Both the 90-day statutory period for detention of an alien under a final order of
> removal (INA § 241) [8 U.S.C. § 1231] and the six-month presumptively reasonable
> period for continued removal efforts, judicially-mandated by the Supreme Court in
> <u>Zadvydas v. Davis</u>, 533 U.S. 678, 701 . . . (2001), have expired.

(Pet. at 6.)  Petitioner argues that her removal period began to run on April 20, 2006, the date of the

Board of Immigration Appeal's decision affirming the Immigration Judge's order of removal.

(Reply at 16.)  Petitioner argues that, even if this Court determines that her removal period has not

begun to run because she has moved the Second Circuit Court of Appeals for a stay of removal, "her

detention, nevertheless, may not be continued as her removal is not reasonably foreseeable and as

her continued detention violates the judicially mandated period of detention set forth in . . .

---

[8] Since petitioner's immigration proceedings were conducted in New York, the Court of
Appeals for the Second Circuit is the appropriate Court of Appeals to handle Petitioner's claims
that challenge the order of removal issued against her.  *See* Section 106(c) of the REAL ID Act;
8 U.S.C. 1252(b)(2).

[*Zadvydas*] and, thus, substantive due process." (Reply at 16-17; *see also* Pet. at 9.) Petitioner argues, as noted above, that there is no likelihood that her removal will be effectuated upon the Second Circuit's ruling on her petition for review because the Second Circuit is required to set aside the removal order in this record as a matter of law. (Reply at 17.) Petitioner argues that, "[i]n any event, post-removal-order aliens, deemed inadmissible to the United States, may not be detained indefinitely pending removal, but may be detained for a reasonable time, presumptively six months, so the Government may effectuate removal." (Reply at 17.)

Petitioner's appeal was denied by the BIA on April 20, 2006, and Petitioner concedes that the removal order was final as of the date of the BIA's decision. (Pet. at 5.) 8 U.S.C. § 1231 states

> Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period"). . . . The removal period begins on the *latest* of the following:
> (i) The date the order of removal becomes administratively final.
> (ii) *If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.*
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231 (a)(1)(A) and (B)(i)-(iii) (emphasis added). In the present case the removal period has not yet begun to run because on November 2, 2006, the Second Circuit granted Petitioner's motion to stay the removal order and on November 28, 2006, the Second Circuit referred the motion for a stay of removal to the panel to review the merits of the petition. *See* http://pacer.ca2.uscourts.gov, Case Number 06-2359. As stated above, where the removal order is judicially reviewed and where the court orders a stay of the removal of the alien, the removal period does not begin until the date of the court's final order. *See* 8 U.S.C. § 1231 (a)(1)(A) and (B)(i)-(iii). In the present case, this means that Petitioner's removal period will not begin until the Second

Circuit Court of Appeals issues its final order regarding Petitioner's challenge to her removal order.

In *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001), the Court reviewed the ability of the Government to detain post-removal-order aliens beyond the removal period pursuant to 8 U.S.C. § 1231(a)(6), which states

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period* and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. §1231(a)(6) (emphasis added). In *Zadvydas*, "the Court interpreted this provision to authorize the Attorney General (now the Secretary [of Homeland Security]) to detain aliens in the second category only as long as 'reasonably necessary' to remove them from the country." *Clark v. Martinez*, 543 U.S. 371, 377 ((2005) (quoting *Zadvydas*, 533 U.S. at 689, 699). The *Zadvydas* Court further "interpreted the statute to permit only detention that is related to the statute's 'basic purpose [of] effectuating an alien's removal . . . once removal is no longer reasonably foreseeable, continued detention is no longer authorized.' " *Clark*, 543 U.S. at 377-78 (quoting *Zadvydas*, 533 U.S. at 696-99.) In addition, the *Zadvydas* Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' " *Clark*, 543 U.S. at 378 (quoting *Zadvydas*, 533 U.S. at 701.) In *Clark v. Martinez* the United States Supreme Court extended this holding to aliens ordered removed who are inadmissible under 8 U.S.C. § 1182. *Clark*, 543 U.S. at 378.

Both Petitioner and Respondent argue that Petitioner became a post-removal order detainee on April 20, 2006, the date on which the Board of Immigration Appeals denied Petitioner's appeal of the Immigration Judge's order of removal.  Respondent argues that, since Petitioner's removal period has not begun as stated in 8 U.S.C. § 1231(a)(1)(B)(ii), the holding in *Zadvydas* does not apply to Petitioner.  This Court agrees.  The holdings in *Zadvydas* and *Clark* apply to aliens who are detained beyond the removal period, not to aliens whose removal periods have not begun to run. As Petitioner's removal period has not yet begun to run in the present case, Petitioner's challenge to her detention pursuant to *Zadvydas* fails.

> **2.      Petitioner's detention is valid despite the use of incorrect alien numbers on her immigration paperwork.**

Petitioner argues that she "is not the correct person in the proceedings as she was detained, placed in removal proceedings, and ordered removed by the respondents under the alien number of a male Canadian citizen (A76-496-932)."  (Pet. at 6.)  Petitioner further argues that she

> continues to be detained under an alien registration number (A72-927-524) pursuant to which she was not taken into ICE custody, detained, placed in removal proceedings or ordered removed thereunder, and for which an INS file does not exist, to the extent that alien registration number A72-927-524 was canceled or annulled by the Immigration and Naturalization Service . . . in 1995 when the petitioner withdrew the adjustment application assigned to this particular alien registration number as having been improvidently filed.

(Pet. at 6-7.)

At the outset the Court notes that, insofar as the above allegations pose a challenge to the removal order or the removal proceedings, the Court lacks jurisdiction to hear those allegations. Insofar as Petitioner contends that these alleged defects bear squarely on the unlikelihood that Petitioner's removal will occur in the foreseeable future because these alleged defects make the order of removal jurisdictionally void, this argument challenges the removal order itself and the

Court lacks jurisdiction to hear those claims.  The Court proceeds solely to determine whether Petitioner's initial and continued detention under an incorrect alien number is valid.

Petitioner argues that because she is currently being detained under an alien registration number that is not the same as the one under which Petitioner was ordered detained or removed under, "her continued detention is not permissible under governing statutes and law"; however, Petitioner does not cite to the specific statutes or law that her detention violates.  (Reply at 3.) Although Petitioner nominally argues that she "is not the correct person in the proceedings as she was detained . . . under the alien number of a male Canadian citizen" Petitioner cannot credibly argue that she is the incorrect person to respond to the current proceedings.  (Pet. at 6.)  In her petition for a writ of habeas corpus in the United States District Court, District of New Jersey, Petitioner states that "[o]n January 26, 1998, following a brief trip abroad, upon arrival at JFK International Airport, as a returning resident immigrant, the Petitioner was placed in regular removal proceedings pursuant to INA § 212(a)(2)(A)(i)(I) as a result of a Canadian conviction." (A.R. at 14.) Although in her present petition, Petitioner argues that she "last entered the United States on May 7, 2000, as a returning lawful permanent resident, in accordance with alien number A72-253-183" Petitioner does not provide the Court with any documentation or other evidence to support such a claim.  (Pet. at 4.)  Furthermore, Petitioner does not assert such a claim in her habeas corpus petition to the District of New Jersey.  (A.R. at 15-16.)  The Court finds no evidence for such a claim in the record.

Therefore, the Court concludes that Plaintiff's due process rights were not violated when she was initially detained under an erroneous alien registration number because Plaintiff cannot credibly claim that she is being detained in error.  The failure of the Immigration and Naturalization Service

on January 26, 1998, to issue a Notice to Appear under Petitioner's correct alien registration number appears to have been simply a clerical error which was compounded when subsequent filings copied down the wrong alien registration number from the Notice to Appear. However, it is clear that Petitioner is the correct person to answer to the charge of removal alleged in the present case; therefore, the fact that the wrong alien registration number was used on the paperwork does not constitute a violation of due process and does not invalidate Petitioner's initial, or subsequent and current, detention.

>**3.**     **Petitioner was validly taken into custody on May 5, 2005, pursuant to a valid Notice of Custody Determination.**

Petitioner advances several arguments claiming that the Notice of Custody Determination that was issued on April 26, 2005, is invalid. First, Petitioner argues that she was

>taken into ICE custody in May 5, 2005, and continues to be detained in accordance with a Notice of Custody Determination (Form I-286), dated April 26, 2005, which erroneously determined that the petitioner was to be detained for referral under a charging document, the Notice to Appear (Form I-862), date January 26, 1998, which was canceled or withdrawn by trial counsel on the record, in April 3, 1998, in accordance with 8 C.F.R.§§ 329.2, 1329.2, before the Immigration Court was seized with this matter, thus, statutorily barring the reconvening of any removal proceedings against the petitioner and/or rendering the reconvening of any such proceedings jurisdictionally void.

(Pet. at 7-8.)

At the outset the Court notes that, insofar as this argument attempts to challenge the removal order, this Court lacks jurisdiction to hear that claim. This Court will only consider the claim that Petitioner's continued detention is invalid because the Notice of Custody Determination erroneously determined that Petitioner was to be detained for referral under a charging document, the January 26, 1998, Notice to Appear, which was cancelled or withdrawn before the Notice of Custody Determination issued. The Court notes that these issues are highly interrelated; however, the Court

retains jurisdiction to hear challenges to Petitioner's detention.

The Court begins its analysis by noting that the two regulations that Petitioner cited, 8 C.F.R. §§ 329.2 and 1329.2, are inapposite.   8 C.F.R. § 329.2 addresses an alien's eligibility for naturalization pursuant to 8 U.S.C. § 1440, and 8 C.F.R. § 1329.2 is not a valid cite in the Code of Federal Regulations.  The Court has reviewed the record in this case in detail and has concluded that the Notice to Appear was validly issued, was never cancelled or withdrawn and, hence, the Notice to Appear supports the issuance of the Notice of Custody Determination.

The Notice to Appear was issued in this case on January 26, 1998.  (Pet. Ex. 9.)  On the first page of the Notice to Appear the sentences are numbered one through five.  After sentence number five the Notice to Appear states "see attached I-831 for continued allegations."  (Ex. 9 at 1.)  The attached I-831 stated that Petitioner was removable pursuant to INA § 212(a)(2)(A)(i)(I), as she had been convicted of a crime involving moral turpitude.  (Pet. Ex. 9 at 2.)  The Notice to Appear informed Petitioner that she was required to appear before an Immigration Judge in New York City, New York, on April 3, 1998.  (Pet. Ex. 9 at 1.)

On April 2, 1998, form I-261 was filed in Petitioner's case.  Form I-261 is entitled "Additional Charges of Inadmissibility/Deportability."  (Pet. Ex. 10.)  This form lists Petitioner's name and states that the action commenced against Petitioner is "removal Proceedings under section 240 of the Immigration and Nationality Act."  (Pet. Ex. 10.)  This form states

> There . . . are hereby lodged against you the additional charge(s) that you are subject to be taken into custody and . . . removed from the United States pursuant to the following provision(s) of law: Section 212(a)(7)(A(i)(l) [and] . . . Section 212(a)(7)(B)(i)(ll) . . . In support of the additional charges there is submitted the following factual allegation(s) . . . in lieu of those set forth in the original charging document:
> 6. You did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document.

7.  You did not then possess or present a nonimmigrant visa, border crossing card, or other document valid for your entry into the United States, issued to you by an authorized official of the United States.

(Pet. Ex. 10.)

On April 3, 1998, the following notation was made to form I-831: "Withdrawn by T.A. on Record on 4-3-98." (Pet. Ex. 9 at 2.) On both the Notice to Appear and Form I-261, there is a stamp that reads "Department of Justice Executive Office for Immigration Review APR 4 1998 Immigration Court, New York, N.Y. JW." (Pet. Ex. 9; Ex. 10.)

A review of these documents shows that the Notice to Appear was validly amended on April 2, 1998, to include two additional charges pursuant to Section 212(a)(7)(A)(i)(l) and Section 212(a)(7)(B)(i)(ll) of the INA. Form I-261 clearly states that these charges are additional charges of inadmissibility and that the factual allegations included therein were submitted "in lieu of those set forth in the original charging document." (Pet. Ex. 10.) In addition, just as in Form I-831, the factual allegations on Form I-261 begin with the number six, further supporting the conclusion that Form I-261 is a continuation of the Notice to Appear, which includes numbered sentences one through five. (Pet. Ex. 9-10.)

After the Notice to Appear was amended by Form I-261, on April 3, 1998, the Government withdrew the charges listed on form I-831 based on INA § 212(a)(2)(A)(i)(I), regarding a crime involving moral turpitude. (Pet. Ex. 9 at 2.) At that time there was still a valid Notice to Appear in this case, as the Notice to Appear was amended on April 2, 1998, to include the two additional charges noted above. Thereafter, on April 4, 1998, the Department of Justice Executive Office for Immigration Review stamped both the Notice to Appear and Form I-261. (Pet. Ex. 9-10.) Tellingly, this stamp does not appear on Form I-831. (Pet. Ex. 9 at 2.) Looking at all of these forms as a

-18-

whole, it is clear that the Notice to Appear was validly issued and that the charges listed on Form I-261 constitute the charges against Defendant as of April 4, 1998.

As the Notice to Appear was validly issued, and was not canceled nor withdrawn by trial counsel on April 3, 1998, Petitioner's argument that the Notice to Appear was cancelled or withdrawn by trial counsel on April 3, 1998, fails[9]. As Petitioner's argument fails, Petitioner's challenge to the Notice of Custody Determination fails as well, as it is premised on the position that the Notice of Custody Determination is invalid because it erroneously determined that Petitioner was to be detained for referral under a charging document that had been cancelled or withdrawn on the record on April 3, 1998.  (Pet. 7-8.)

Next, Petitioner argues that she

was taken into ICE custody in May 5, 2005, and continues to be detained in accordance with a Notice of Custody determination (Form I-286), dated April 26, 2005, which did not transfer custody of the petitioner to ICE, as it was issued under New York Immigration court File No. A76-496-[932], which had been closed administratively the previous year with the consent of the Government and by court order of an Immigration Judge, dated March 5, 2004, rendering the custodial document (Form I-286) jurisdictionally defective.

(Pet. at 7.)  The Court rejects this argument.  At the outset the Court notes that there is no evidence in the record to support Petitioner's claim that Immigration Court File No. A76-496-932 (the alien number under which removal proceedings were initiated against Petitioner on January 26, 1998) was

---

[9] The Court notes that, to the extent that this argument requires this Court to consider the validity of the removal order, this Court lacks jurisdiction to hear that claim.  In addition, Petitioner argues that the Notice to Appear is subject to cancellation as "it is predicated upon an additional charge lodged by government counsel under Form I-261, after the withdrawal of the [Notice to Appear] and the charge of inadmissibility lodged thereunder by the immigration inspector- a procedure that renders Form I-261 without legal force and effect."  (Pet. at 8.)  This argument squarely challenges the removal order, as it asks this Court to determine that the charges added on April 2, 1998, are "without legal force and effect."  As noted above, this Court lacks jurisdiction to hear this claim, and therefore will not address this claim on its merits.

administratively closed "with the consent of the Government." (Pet. at 7.) There is no evidence in the record that the Government consented to the any action that operated to close the removal proceedings against Petitioner.

It is clear that these removal proceedings were not administratively closed on March 5, 2004. In support of her argument that the removal proceedings were closed, Petitioner points to Exhibit 13 of her petition. Exhibit 13 is a form from the United States Department of Justice, Executive Office for Immigration Review, from the Immigration Court in New York City. (Pet. Ex. 13.) On this form, the "other" box is checked and, written in handwriting in the space provided next to the "other" box, it states "admin closure order atty withdrawal order." (Pet. Ex. 13.) Exhibit 13 is signed, that signature is illegible, and the line below the signature states "Court Clerk Immigration Court." (Pet. Ex. 13.) In addition, the form states that "[a] copy of this decision was personally served [to] TA's [and was] served via US mail [to] alien/atty." Immediately below this notation is a line that reads: "Date 3/5/04 IJ RDW CLK IAN." (Pet. Ex. 13.)

It is unclear to this Court what Exhibit 13 is[10], but it is clear that Exhibit 13 does not achieve the result that Petitioner alleges; that is, closure of the removal proceedings initiated against Petitioner under alien registration number A76-496-932. It is clear from the record that, on June 6, 2003, the Board of Immigration Appeals held "that the Immigration Judge erred in terminating the proceedings" and that "[t]he record [was] remanded to the Immigration Judge to determine the respondent's eligibility for any relief from removal." (Pet. Ex. 12.) The Board of Immigration

---

[10] It appears that Exhibit 13 may simply be granting a request to withdraw by Petitioner's former counsel. Indeed, this is how Petitioner described the action in her writ of habeas corpus to the District of New Jersey, where she stated that "on 03-05-04, Immigration Judge Robert D. Weisel granted former counsel's motion to withdraw from the record and administratively closed the file." (A.R. 16.)

Appeals expressly stated that "[t]he record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and the entry of a new decision." (Pet. Ex. 13.) Since the Board of Immigration Appeals reversed the Immigration Judge's decision and remanded the case for further proceeding consistent with the Board's opinion, the Immigration Court could not close the entire file relating to the removal proceedings against Petitioner, and, in essence, terminate the proceedings, until the Immigration Court ruled on the issues remanded to it by the BIA.  While it would be possible to terminate the proceedings if the Government dismissed all charges against Petitioner, there is no evidence in the record for Petitioner's contention that the file was administratively closed with the consent of the Government.   In further support of the conclusion that the order at Exhibit 13 did not act to administratively close the removal proceedings against Petitioner, the order was signed by a "Court Clerk" for the Immigration Court, and not, as stated by Petitioner, by court order of an immigration Judge.  (Pet. Ex. 13.)  Therefore, insofar as the Petition relies on this argument, the Court recommends that the Petition be denied.

Next, Petitioner argues that she

continues to be detained in accordance with a custodial instrument, the Notice of Custody Determination, dated April 26, 2005, which is jurisdictionally defective, in that it was issued without the predicate NTA [Notice to Appear]. . . and Warrant of Arrest (Form I-200), and prior to a determination having been made to have the petitioner served with same, in accordance with 8 C.F.R. Parts 236 and 239, and which appears to have been issued in conjunction with a non-existent, invalid or insufficient NTA, or charging document, which was withdrawn by the Service as at April 3, 1998.

(Pet. at 8.)

The Court rejects this argument.  As stated above, the Notice to Appear was validly issued and the Notice of Custody Determination is not jurisdictionally defective as it was issued with a predicate Notice to Appear.  In addition, Petitioner argues that a Warrant of Arrest is a predicate to

-21-

issuing a Notice of Custody Determination. While Petitioner cites generally to 8 C.F.R. §§ 236 and 239, Petitioner does not cite to any particular section as requiring the issuance of an arrest warrant before a Notice of Custody Determination is validly issued.

8 C.F.R. § 236.1 is entitled "Apprehension, custody and detention." 8 C.F.R. § 236.1(b) deals with warrants for arrest, while 8 C.F.R. § 236.1(g) deals with the Notice of Custody Determination. 8 C.F.R. § 236.1(g)(1) states

> At the time of the issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, an immigration official may issue a Form I-286, Notice of Custody Determination. A notice of custody determination may be issued by those immigration officials listed in 8 CFR 287.5(e)(2) and may be served by those immigration officials listed in 8 CFR 287.5(e)(3), or other officers or employees of the Department or the United Staes who are delegated the authority to do so pursuant to 8 CFR 2.1.

8 C.F.R. § 236.1(g)(1). Nothing in this provision requires an arrest warrant to issue prior to the issuance of a notice of custody determination. Rather, the only prerequisite for the issuance of a notice of custody determination is the issuance of a notice to appear. A close review of 8 C.F.R. § 236 reveals that 8 C.F.R. § 236.1 is the only relevant provision relating to arrest warrants and notice of custody determinations. A close review of 8 C.F.R. § 239 reveals that this section is inapplicable to Petitioner's argument, as it deals with the requirements of the issuance, cancellation and filing of a Notice to Appear. Therefore, since 8 C.F.R. § 236.1(g)(1) states that the only prerequisite to issuing a Notice of Custody Determination is the issuance of a Notice to Appear, and since Petitioner has not cited this Court to any other statute or regulation that requires Petitioner to be issued a warrant of arrest prior to receiving a Notice of Custody Determination, this Court recommends that Petitioner's petition be denied with respect to this argument.

### III. RECOMMENDATION

-22-

Based on all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus [#1] be **DISMISSED WITH PREJUDICE**.[11]


DATED: April 25, 2007                            s/ *Franklin L. Noel*
                                                 FRANKLIN L. NOEL
                                                 United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **May 15, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.

---

[11]  The Petition should be dismissed in its entirety, including as against Defendant Pat Carr, as it appears that Defendant Carr was simply sued by virtue of his role as Petitioner's current custodian.  As the Sherburne County Jail retains custody of Petitioner pursuant to a contractual agreement with the Department of Homeland Security, the Court recommends that the Petition be dismissed as against Defendant Carr for the same reasons that the Court recommends that the Petition be dismissed against the federal Defendants.